**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **STINGRAY IP SOLUTIONS, LLC,** <br> *Plaintiff,* <br><br> v. <br><br> **LEGRAND, LEGRAND FRANCE, BTICINO SPA, AND LEGRAND SNC,** <br> *Defendants.* | **Consolidated Lead: Case No. 2:21-cv-201-JRG** <br><br> **JURY TRIAL DEMANDED** |
| **STINGRAY IP SOLUTIONS, LLC,** <br> *Plaintiff,* <br><br> v. <br><br> **AMAZON.COM, INC., AMAZON.COM SERVICES LLC, RING LLC, EERO LLC, AND IMMEDIA SEMICONDUCTOR LLC,** <br> *Defendants.* | **Case No. 2:21-cv-193-JRG** <br><br> **JURY TRIAL DEMANDED** |
| **STINGRAY IP SOLUTIONS, LLC,** <br> *Plaintiff,* <br><br> v. <br><br> **SOMFY SA AND SOMFY ACTIVITS SA,** <br> *Defendants.* | **Case No. 2:21-cv-195-JRG** <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE PURSUANT TO RULES 12(B)(2) AND 12(B)(6)**

Defendants Legrand, Legrand France, Bticino SpA, and Legrand SNC (collectively, "Defendants") hereby file this Motion to Dismiss with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) against Plaintiff Stingray IP Solutions, LLC ("Stingray").

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................... 1

II.     STATEMENT OF ISSUES ............................................................................. 2

III.    FACTUAL BACKGROUND........................................................................... 2

     A.     Stingray's Conclusory Claim of Personal Jurisdiction ........................... 2

     B.     Defendants Have No Contacts with This District Through Which Jurisdiction Can Be Established............................................................................................ 4

     C.     Stingray Accuses Stationary Products of Infringing Patents That Require Devices Be Mobile ......................................................................................... 5

IV.    LEGAL STANDARD....................................................................................... 6

     A.     Personal Jurisdiction ............................................................................... 6

           1.     General Personal Jurisdiction ..................................................... 7

           2.     Specific Personal Jurisdiction..................................................... 8

           3.     Imputing Contacts of a Third Party to Defendants for Specific Personal Jurisdiction................................................................................. 9

     B.     Motion to Dismiss for Failure to State a Claim .................................... 11

V.     ARGUMENT.................................................................................................. 11

     A.     The Case Must Be Dismissed for Lack of Personal Jurisdiction.......................... 11

           1.     The Defendants are Not Subject to General Personal Jurisdiction Here .. 11

           2.     The Defendants are Not Subject to Specific Personal Jurisdiction Here.. 12

     B.     Stingray Fails to Plead How Stationary Products Infringe Patents Requiring Mobile........................................................................................ 20

VI.    CONCLUSION.............................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accorda Therapeutics Inc. v. Mylan Pharms. Inc.*,
   817 F.3d 755 (Fed. Cir. 2016)..................................................................................8

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.*,
   480 U.S. 102 (1987)..................................................................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................11

*B/E Aerospace, Inc. v. Zodiac Aerospace*,
   No. 2:16-cv-01417-JRG-RSP, 2018 U.S. Dist. LEXIS 220294 (E.D. Tex.
   Nov. 30, 2018) ...................................................................................................14, 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................11

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
   21 F.3d 1558 (Fed. Cir. 1994)..................................................................................6

*Bot M8 LLC v. Sony Corp. of Am.*,
   4 F.4th 1342 (Fed. Cir. 2021) ................................................................................20

*Bowlby v. City of Aberdeen*,
   681 F.3d 215 (5th Cir. 2012) ..................................................................................11

*Bristol-Myers Squibb Co. v. Super. Ct.*,
   137 S. Ct. 1773 (2017)..............................................................................................8

*Brooks & Baker v. Flambeau, Inc.*,
   2011 U.S. Dist. LEXIS 112568 (E.D. Tex. Sept. 30, 2011) ............................18, 19

*Celgard, LLC v. SK Innovation Co.*,
   792 F.3d 1373 (Fed. Cir. 2015).......................................................................*passim*

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014).......................................................................................7, 11, 15

*Dalton v. R & W Marine, Inc.*,
   897 F.2d 1359 (5th Cir. 1990) ................................................................................15

*Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
   469 F.3d 1005 (Fed. Cir. 2006)..........................................................................22, 24

*Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*
    514 F.3d 1063 (10th Cir. Colo. 2008) ........................................................................8

*Elecs. for Imaging, Inc. v. Coyle,*
    340 F.3d 1344 (Fed. Cir. 2003) ..................................................................................8

*Eon Corp. IP Holdings LLC v. Silver Springs Network,*
    815 F.3d 1314 (Fed. Cir. 2016) .......................................................................2, 21, 23

*Fellowship Filtering Techs., LLC v. Alibaba.com, Inc.,*
    No. 2:15-cv-2049-JRG, 2016 U.S. Dist. LEXIS 195917 (E.D. Tex. Aug. 31,
    2016) ................................................................................................................. *passim*

*Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG,*
    933 F.3d 1302 (Fed. Cir. 2019) ..................................................................................7

*Good Sportsman Mktg. LLC v. Li & Fund Ltd.,*
    No. 6:07-cv-395, 2010 U.S. Dist. LEXIS 150063 (E.D. Tex. May 12, 2010) ........14

*Goodyear Dunlop Tire Ops. S.A. v. Brown,*
    564 U.S. 915 (2011) ....................................................................................................7

*Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.,*
    85 F.3d 201 (5th Cir. 1996) ......................................................................................10

*Hargrave v. Fibreboard Corp.,*
    710 F.2d 1154 (5th Cir. 1983) ...............................................................2, 10, 16, 17

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
    466 U.S. 408 (1984) ....................................................................................................7

*Int'l Shoe Co. v. Washington,*
    326 U.S. 310 (1945) ....................................................................................................7

*Johnston v. Multidata Sys. Int'l Corp.,*
    523 F.3d 602 (5th Cir. 2008) ..................................................................................6, 7

*Keeton v. Hustler Magazine, Inc.,*
    465 U.S. 770 (1984) ....................................................................................................8

*Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC,*
    594 F.3d 383 (5th Cir. 2010) ....................................................................................11

*Lyda v. CBS Corp.,*
    838 F.3d 1331 (Fed. Cir. 2016) ................................................................................24

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.,*
    890 F.3d 995 (Fed. Cir. 2018) ....................................................................................7

*Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*,
  803 F.2d 684 (Fed. Cir. 1986)........................................................................24

*MGA Entertainment v. Innovation First*,
  525 Fed. Appx. 576 (9th Cir. Cal. 2013) ...........................................................9

*Miles v. Am. Tel. & Tel. Co.*,
  703 F.2d 193 (5th Cir. 1983) ...........................................................................18

*Palnik v. Westlake Entertainment, Inc.*
  344 Fed. Appx 249 (6th Cir. Ohio 2009).............................................................9

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
  253 F.3d 865 (5th Cir. Tex. 2001) ......................................................................8

*QR Spex, Inc. v. Motorola, Inc.*,
  507 F. Supp. 2d 650 (E.D. Tex. 2007) ................................................................9

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
  148 F.3d 1355 (Fed. Cir. 1998)..................................................................14, 15

*Renishaw PLC v. Marposs Societa' per Azioni*,
  158 F.3d 1243 (Fed. Cir. 2003)..................................................................22, 24

*Ruby Sands LLC v. Am. Nat'l Bank of Texas*,
  No. 2:15-CV-1955-JRG, 2016 WL 3542430 (E.D. Tex. June 28, 2016) ....................2, 20, 22

*Seitz v. Envirotech Sys. Worldwide Inc.*,
  513 F. Supp. 2d 855 (S.D. Tex. 2007)..........................................................10, 18

*Taishan Gypsum Co. v. Gross*,
  753 F.3d 521 (5th Cir. 2014) ...........................................................................11

*Thompson v. City of Waco*,
  764 F.3d 500 (5th Cir. 2014) ...........................................................................11

*Walden v. Fiore*,
  134 S. Ct. 1115 (2014).......................................................................................8

*Wechsler v. Macke Int'l Trade, Inc.*,
  486 F.3d 1286 (Fed. Cir. 2007)...........................................................................9

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980)..........................................................................................14

**Other Authorities**

Fed. R. Civ. P. 4(k)(1)....................................................................................4, 6, 7

Fed. R. Civ. P. 4(k)(2)................................................................................................4, 7

Fed. R. Civ. P. 12(b)(2)............................................................................................6, 11

Fed. R. Civ. P. 12(b)(6).............................................................................................6

## TABLE OF EXHIBITS

| Exhibit No. | Exhibit Description |
|---|---|
| A | Chart Identifying Accused Products for Each Patent |
| B | Representative Claims from Asserted Patents from Complaint |
| C | Decl. of Sean E. Jackson ("Jackson Decl.") |
| D | U.S. Patent No. 6,958,986 (the "'986 patent") |
| E | U.S. Patent No. 6,961,310 (the "'310 patent") |
| F | U.S. Patent No. 7,027,426 (the "'426 patent") |

# I.     INTRODUCTION

In attempt to secure jurisdiction in this district, Stingray chose to bring two separate, related actions[1] ***not*** against the U.S. entities who perform the acts they accuse, ***but instead*** against foreign entities who do not perform the accused acts, direct the accused acts, or have any ties to the accused acts.

To compound matters, Stingray's attempts to secure jurisdiction fail because the foreign entities (the Defendants) do not have the requisite contacts with Texas or even the United States as a whole.  Stingray's complaint does not allege that the Defendants have directed activities at the State of Texas, or even the United States.  Defendants are not incorporated, nor registered to do business, in any state.  Each of the Defendants is a company organized under the laws of a foreign country, and each has its principal place of business in a foreign country.  Further, the Defendants do not place any of the accused products into the stream of commerce.

Furthermore, Stingray does not allege any facts suggesting the close relationship necessary to subject a foreign defendant to jurisdiction based on the acts of its subsidiaries, i.e., that they are essentially the same company.  Defendants do not exercise control over the daily activities, in Texas or in the United States, of the companies that sell the accused products, or the various Legrand entities Stingray references in the complaint.

Absent exceptional circumstances that Stingray does not even attempt to allege (because it cannot), "a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983).

---

[1] *See* related action Case No. 2:21-cv-202-JRG, Dkt. 1.

DEFENDANTS' MOTION TO DISMISS

In addition, Stingray's infringement theory for three of the four Asserted Patents[2] is doomed because it claims stationary devices, such as light switches, infringe patents that apply solely to "mobile" devices.  This Court has decided this exact issue and dismissed the plaintiff's claims on the pleadings for "mak[ing] no factual allegations that even remotely suggest that [defendant]…, makes, uses, offers to sell, or sells ***mobile devices***."  *Ruby Sands LLC v. Am. Nat'l Bank of Texas*, No. 2:15-CV-1955-JRG, 2016 WL 3542430, at *4 (E.D. Tex. June 28, 2016) (Gilstrap, J.) (emphasis in original).  The Court should reach the same outcome here.  *Eon Corp. IP Holdings LLC v. Silver Springs Network*, 815 F.3d 1314, 1321-22 (Fed. Cir. 2016).  The Court should dismiss Stingray's infringement counts for the patents that require the infringing devices be "mobile."

## II.    STATEMENT OF ISSUES

1.    Whether Stingray alleges facts sufficient to establish personal jurisdiction over the Defendants, which are all foreign entities.

2.    Whether Stingray adequately pleads infringement where the complaint accuses stationary products of infringing claims that require the devices be "mobile."

## III.    FACTUAL BACKGROUND

### A.    Stingray's Conclusory Claim of Personal Jurisdiction

Stingray filed the present action alleging infringement of the Asserted Patents by each of the Defendants, all foreign entities, directly and through involvement in the activities of subsidiaries and related Legrand entities.  *See* Dkt. 1, ¶¶ 65-66, 84-85, 101-102, 117-118.  Stingray relies on a vicarious liability theory alleging only the following:

Defendant Legrand is vicariously liable for the infringing conduct of Defendants

---

[2] Stingray asserts the following four United States patents in this case: U.S. Patent No. 6,958,986 (the "'986 patent"), U.S. Patent No. 6,961,310 (the "'310 patent"), U.S. Patent No. 6,980,537, and U.S. Patent No. 7,027,426 (the "'426 patent") (collectively, the "Asserted Patents").  (*See* Dkt. 1.)

> Legrand France, Bticino, and Legrand SNC, other members of the Legrand Group, and U.S. based subsidiaries in the Legrand North and Central America division (under both the alter ego and agency theories). On information and belief, Defendants Legrand, Legrand France, Bticino, and Legrand SNC, other members of the Legrand Group, and U.S. based subsidiaries in the Legrand North and Central America division are essentially the same company. Moreover, Legrand, as the parent company, along with its related entities that exercise control over subsidiary entities, has the right and ability to control the infringing activities of those subsidiary entities . . .

*Id.*, ¶¶ 66, 85, 102, 118.  Notably, Stingray alleges on "information and belief" that the Defendants and "U.S. based subsidiaries" are "essentially the same company" or that the Defendants "control the infringing activities of those subsidiary entities," reciting the legal standards with no support.

Stingray acknowledges that each of the Defendants is a company organized under the laws of a foreign country, and that each has its principal place of business in a foreign country. *Id.*, ¶¶ 2-5.  For example, Stingray concedes that Defendant Legrand ("Legrand") is a company organized under the laws of France, with its principal place of business and registered office located at 128 avenue du Maréchal de Lattre de Tassigny, 87000 Limoges, France.  *Id.*, ¶ 2.  Stingray also concedes that Defendant Legrand France ("Legrand France") is a company organized under the laws of France, with its principal place of business and registered office located at 128 avenue du Maréchal de Lattre de Tassigny, 87000 Limoges, France.  *Id.*, ¶ 3.  Stingray further concedes that Defendant Bticino SpA ("Bticino") is a company organized under the laws of Italy, with its principal place of business and registered office at Viale Borri 231, 21100 Varese, Italy.  *Id.*, ¶ 4.  And, lastly, Stingray concedes that Defendant Legrand SNC ("Legrand SNC") is a company organized under the laws of France, with its principal place of business located at 128 avenue du Maréchal de Lattre de Tassigny, 87000 Limoges, France.  *Id.*, ¶ 5.  Stingray, nonetheless, alleges in conclusory form that the Defendants "do business in the U.S., the state of Texas, and in this District" through their U.S.-based subsidiaries—none of which are named as Defendants.  *Id.*, ¶ 16.

Stingray alleges that the Defendants are subject to specific and general personal jurisdiction under Fed. R. Civ. P. 4(k)(1), or in the alternative, under Fed. R. Civ. P. 4(k)(2).  *Id.*, ¶¶ 19, 25, 27, 29, 31, 33, 35, 37.  Specifically, Stingray alleges, again in conclusory fashion, that "[t]his Court has personal jurisdiction over Defendant Legrand, directly and/or through the activities of Legrand's intermediaries, agents, related entities, distributors, importers, customers, subsidiaries, and/or consumers, including through the activities of Defendants Legrand France, Bticino, and Legrand SNC, other members of the Legrand Group, and U.S. based subsidiaries in the Legrand North and Central America division."  *Id.*, ¶ 20; *see also id.*, ¶¶ 28, 32, 36 (similar conclusory statements alleging personal jurisdiction over Defendants Legrand France, Bticino, and Legrand SNC).[3]

## B.    Defendants Have No Contacts with This District Through Which Jurisdiction Can Be Established.

In attempt to tie the foreign Defendants to activities in the U.S., the complaint cites to the following U.S. domestic entities: Legrand AV Inc., Legrand North America, LLC, The WattStopper Inc., Legrand Connectrac, LLC, and Ortronics Inc. (collectively, "Domestic Entities").  *See id.*, ¶¶ 11-15.

Contrary to Stingray's assertions, none of the Defendants exercise control over any of the Domestic Entities' daily activities in Texas or in the United States.  Ex. C, Decl. of Sean E. Jackson ("Jackson Decl.") ¶ 22.  Instead, the daily activities of the Domestic Entities in the United States are controlled and directed by the Domestic Entities, i.e., the directors and officers of the Domestic Entities.  *Id.*, ¶ 22.  None of the Defendants manufacture, design, sell, offer to sell, or import any of the accused products.  *Id.*, ¶¶ 7-14.  Specifically, contrary to Stingray's assertions, Legrand SNC

---

[3] In fact, Defendants notified Plaintiff that it sued the wrong entities, yet Plaintiff refuse to name the correct parties or dismiss the current suit.

does not import any of the accused products into Texas or into any other state in the United States. *Id.*, ¶¶ 13-14. And none of the Defendants have any U.S. places of business. *Id.*, ¶¶ 7-14. The Domestic Entities are U.S. subsidiaries and have, at best, no more than the typical parent-subsidiary relationship with various of the Defendants. *Id.*, ¶¶ 15-20. No Domestic Entity is merely an alter ego of any of the Defendants. The Domestic Entities are separate entities from the Defendants and have their own separate offices, executives, employees, bank accounts, accounting systems, tax returns, and financial statements, and observe all corporate formalities. *Id.*, ¶¶ 21-24.

**C.    Stingray Accuses Stationary Products of Infringing Patents That Require Devices Be Mobile.**

Stingray accused defendants of making and selling products that infringed the Asserted Patents. *See* Dkt. 1, ¶¶ 40-59. In so doing, Stingray chose representative claims for each patent that include a "mobile" node requirement. *See* Ex. B; Dkt. 1, ¶¶ 67, 86, 103; '986 patent at 60:4-19 (Claim 25); '310 patent at 10:8-20 (Claim 13); '426 patent at 8:7-17 (Claim 8). Stingray's complaint accuses the following products of meeting the mobile nodes requirement:  light switches, dimmers, plugs, shades, hubs, and ceiling mount sensors. *See* Dkt. 1, ¶¶ 46-50, 54-55, 58, 67, 86, 103; Ex. A. The complaint contains no allegations explaining how these stationary products could infringe, directly or indirectly, patents requiring mobility.

Three of those patents—the '986, '310, and '426 patents—each require infringing devices be "mobile." Each representative claim of these patents expressly requires that certain claimed nodes be "mobile." *See* Ex. B; '986 patent at 60:4-19; '310 patent at 10:8-20; '426 patent at 8:7-17. The remaining claim nodes must also be "mobile" because they belong to a "mobile ad hoc network." *Id.* Notably, '310 and '426 patent claims require a "mobile ad hoc network" which, as Stingray's patents describe, is a network "formed of mobile nodes only." '310 patent, 1:18-20; '426 patent at 1:19-21; *see also* '310 patent, 1:16-18 (contrasting a "mobile ad-hoc network" with

networks having fixed nodes.).  Accordingly, representative claims from the '986, '310, and '426 patents each require that every claimed node—which Stingray maps to the accused products—be "mobile" and not fixed.

## IV.    LEGAL STANDARD

Defendants move for dismissal with prejudice of the complaint, in whole or in part, under Rule 12(b)(2) and Rule 12(b)(6) due to fatal, and uncurable deficiencies in Stingray's pleading.

### A.    Personal Jurisdiction

As mentioned above, Stingray alleges that the Defendants are subject to either general or specific personal jurisdiction under Federal Rules of Civil Procedure ("FRCP") 4(k)(1) or 4(k)(2) directly and/or through the activities of the Domestic Entities.  "The plaintiff bears the burden of establishing a district court's [personal] jurisdiction over a non-resident." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008); *see also Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015).

Under FRCP 4(k)(1), whether a defendant is subject to "personal jurisdiction in the forum state involves two inquiries: first, whether the forum state's long-arm statute permits service of process and, second, whether the assertion of jurisdiction is consistent with due process." *Celgard*, 792 F.3d at 1377.[4]  "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Johnston*, 523 F.3d at 609.

Under FRCP 4(k)(2), a defendant is subject to personal jurisdiction if "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts

---

[4] In a patent case, Federal Circuit law controls the question of whether this Court has personal jurisdiction over a defendant.  *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564-65 (Fed. Cir. 1994).

of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018) (citation omitted); *see also Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG*, 933 F.3d 1302, 1309 (Fed. Cir. 2019). The due process requirement of Fed. R. Civ. P. 4(k)(2) "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *M-I Drilling*, 890 F.3d at 999. These minimum contacts may give rise to specific personal jurisdiction or general personal jurisdiction. *See Johnston*, 523 F.3d at 609.

To comport with the limits of federal due process, the plaintiff must show that the defendant has sufficient contact with either the forum state (under FRCP 4(k)(1)) or the United States (FRCP 4(k)(2)) "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and quotation marks omitted); *see also Celgard*, 792 F.3d at 1377–78.

### 1. General Personal Jurisdiction

General personal jurisdiction applies to a defendant only in "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Goodyear Dunlop Tire Ops. S.A. v. Brown*, 564 U.S. 915, 924 (2011) (quoting *Int'l Shoe*, 326 U.S. at 318); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984). Under Supreme Court precedent, "only a limited set of affiliations with a forum will render a defendant amenable to [general] jurisdiction there," such as a corporation's place of incorporation or principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137-39 (2014) (the proper test for general personal jurisdiction is "whether that corporation's affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.").

## 2.   Specific Personal Jurisdiction

Specific personal jurisdiction is a claim-specific inquiry that looks to the defendant's claim-related contacts in the forum.  *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 109 (1987); *see also Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1781 (2017); *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).

The Federal Circuit applies a three-prong test when considering if the exercise of specific personal jurisdiction in a case comports with due process: "(1) whether the defendant purposefully directed its activities at residents of the forum state, (2) whether the claim arises out of or relates to the defendant's activities with the forum state, and (3) whether assertion of personal jurisdiction is reasonable and fair." *Celgard*, 792 F.3d at 1377 (citation omitted).[5]

Again, the plaintiff has the burden on parts one and two of the specific jurisdiction test, and then the burden shifts to the defendant to prove that personal jurisdiction is unreasonable.  *Id*. at 1378 (citing *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003)).  A plaintiff cannot rely merely on conclusory allegations and must supply specific facts sufficient to establish that the Court has personal jurisdiction over all defendants.  *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. Tex. 2001) (finding plaintiff failed to show personal jurisdiction where appellants provided only conclusory allegations and no evidence supporting its jurisdictional allegations); *see also Dudnikov v. Chalk & Vermillion Fine Arts, Inc.* 514 F.3d 1063, 1070 (10th Cir. Colo. 2008) (stating personal jurisdiction allegations must contain "well pled (that is, plausible, non-conclusory, and non-speculative) facts."); *MGA Ent. v. Innovation First,* 525 F. App'x 576, 578 (9th Cir. Cal. 2013) (holding plaintiff is "obligated to

---

[5] For patent cases, the due process elements of personal jurisdiction are governed by Federal Circuit law.  *Accorda Therapeutics Inc. v. Mylan Pharms. Inc.*, 817 F.3d 755, 759 (Fed. Cir. 2016).

come forward with facts . . . supporting personal jurisdiction"); *Palnik v. Westlake Ent., Inc.* 344 F. App'x 249, 251 (6th Cir. Ohio 2009) (holding when "a court decides a motion to dismiss for lack of personal jurisdiction . . . the complaint must have established with reasonable particularity those specific facts that support jurisdiction").

### 3.  Imputing Contacts of a Third Party to Defendants for Specific Personal Jurisdiction

Only under certain exceptional circumstances is it possible for a third party's contacts to be imputed to a defendant under an alter ego or agency theory for the purposes of establishing specific personal jurisdiction. *See*, *e.g.*, *Celgard*, 792 F.3d at 1379.

"To impute the contacts of a third party to the defendant under an alter ego theory, the lines between the defendant and the third party must become 'so blurred that the two become one.'"[6] *Fellowship Filtering Techs., LLC v. Alibaba.com, Inc.*, No. 2:15-cv-2049-JRG, 2016 U.S. Dist. LEXIS 195917, at *6 (E.D. Tex. Aug. 31, 2016) (Gilstrap, J.) (quoting *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 663 (E.D. Tex. 2007)) (emphasis added).  The Fifth Circuit has articulated several factors to aid the determination of whether a parent and its subsidiary are alter egos:

> (1) the parent and the subsidiary have common stock ownership; (2) the parent and the subsidiary have common directors or officers; (3) the parent and the subsidiary have common business departments; (4) the parent and the subsidiary file consolidated financial statements and tax returns; (5) the parent finances the subsidiary; (6) the parent caused the incorporation of the subsidiary; (7) the subsidiary operates with grossly inadequate capital; (8) the parent pays the salaries and other expenses of the subsidiary; (9) the subsidiary receives no business except that given to it by the parent; (10) the parent uses the subsidiaries property as its own; (11) the daily operations of the two corporations are not kept separate; and (12) the subsidiary does not observe the basic corporate formalities, such as keeping separate books and records and holding shareholder and board meetings.

---

[6] Because alter ego issues are not unique to patent law, the law of the regional circuit applies. *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1295 (Fed. Cir. 2007).

*Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 208-209 (5th Cir. 1996). "Resolution of alter ego issues must be based on a consideration of the totality of the circumstances." *Id*. (internal quotation omitted).  The plaintiff bears the burden of proving that a parent and its subsidiary are alter egos.  *Seitz*, 513 F. Supp. 2d at 865.

At bottom, even after considering the totality of the circumstances, "the lines between the defendant and the third party must become 'so blurred that the two become one'" if the contacts of a third party are to be imputed to a defendant under an alter ego theory.  *Fellowship Filtering Techs.*, 2016 U.S. Dist. LEXIS 195917 at *6.  For example, the Fifth Circuit has stated:

> 100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations. Generally, our cases demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes. The degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship. All the relevant facts and circumstances surrounding the operations of the parent and subsidiary must be examined to determine whether two separate and distinct corporate entities exist.

*Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983) (citations omitted).

"As a general matter, the corporate form should not be lightly disregarded." *Fellowship Filtering Techs.*, 2016 U.S. Dist. LEXIS 195917 at *6.  Thus, "the typical corporate relationship between a parent and subsidiary, including one hundred percent stock ownership and identity of directors and officers, is not a sufficient basis to impute the contacts of a third party to the defendant under an alter ego theory." *Id.*

"To impute the contacts of a third party to the defendant under an agency theory, [plaintiff must show that] the defendant [exercises] control over the third party's activities in the forum by 'directing its agents or distributors to take action there.'" *Fellowship Filtering Techs.*, 2016 U.S. Dist. LEXIS 195917 at *5-6 (quoting *Daimler*, 571 U.S. at 135 n.13).  "For an agency relationship to permit imputation of contacts, the parent company's control over the agent must pervade the

agent's dealings with the forum." *Id.* at *5–6 (citing *Taishan Gypsum Co. v. Gross*, 753 F.3d 521, 532 (5th Cir. 2014)).

**B.      Motion to Dismiss for Failure to State a Claim**

To survive dismissal at the pleading stage, a complaint must state enough facts such that the claim to relief is plausible on its face.  *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bowlby v. City of Aberdeen*, 681 F.3d 215, 227 (5th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

**V.      ARGUMENT**

**A.      The Case Must Be Dismissed for Lack of Personal Jurisdiction**

**1.   The Defendants are Not Subject to General Personal Jurisdiction Here**

The Defendants do not have contacts with this jurisdiction, or the United States as a whole, that are "so 'continuous and systematic' as to render [them] essentially at home in the forum." *See Daimler*, 571 U.S. at 138–39.  The Defendants are not incorporated, nor registered to do business, in any state—each of the Defendants is a company organized under the laws of a foreign country, and each has its principal place of business in a foreign country.  Ex. C, Jackson Decl. ¶¶ 7-14. The Defendants are not at home in this forum or in the United States as a whole and it would be unfair to subject any of them to general personal jurisdiction.

Stingray attempts to cure this failing by alleging that the Domestic Entities' actions open them to general personal jurisdiction in this state and district and that the Domestic Entities' actions can be imputed to the Defendants.  Dkt. 1, ¶¶ 19, 27, 31, 35.  As an initial matter, the Federal Circuit generally speaks of imputing the contacts of a third party under an alter ego or agency theory in regard to specific personal jurisdiction, not general personal jurisdiction, so Stingray does not have any viable argument to establish general jurisdiction under governing law.  *See*, *e.g.*, *Celgard*, 792 F.3d at 1379 ("For purposes of specific personal jurisdiction, the contacts of a third-party may be imputed to the defendant under either an agency or alter ego theory.").  However, for the reasons stated below in Section V.A.2.b, the Domestic Entities are neither alter egos nor agents of the Defendants, and thus this Court need not decide whether the Domestic Entities would be subject to general personal jurisdiction here.

### 2.  The Defendants are Not Subject to Specific Personal Jurisdiction Here

Despite the complete lack of connection between the Defendants and the United States (much less Texas), Stingray baldly alleges, in conclusory fashion, that "[t]his Court has personal jurisdiction over Defendant Legrand, directly and/or through the activities of Legrand's intermediaries, agents, related entities, distributors, importers, customers, subsidiaries, and/or consumers."  Dkt. 1, ¶ 20; *see also id.*, ¶¶ 28, 32, 36 (similar conclusory statements alleging personal jurisdiction over Defendants Legrand France, Bticino, and Legrand SNC).  However, to the contrary, the Defendants are not subject to specific personal jurisdiction here because (1) the Defendants do not have sufficient contacts with this forum, or the United States as a whole, to make the exercise of specific personal jurisdiction over them appropriate, and (2) the contacts of the Domestic Entities cannot be imputed to any of the Defendants.

> **a.  The Defendants Do Not Have Sufficient Contacts With this Forum, or the United States as a Whole, to Make the Exercise of Specific Personal Jurisdiction Over Them Appropriate.**

Under Federal Circuit law, in order to show that the Defendants are subject to specific personal jurisdiction here, Stingray must affirmatively establish that (1) the Defendants purposefully directed their activities at residents of the forum state, and (2) its claim arises out of or relates to the Defendants' activities with the forum state.  *Celgard*, 792 F.3d at 1377–78.  In this case, Stingray's conclusory statements in the complaint do not meet its burden for either prong.

Not only are conclusory allegations per se insufficient to satisfy Stingray's burden, the Defendants have no relation to or activities with Texas or the United States.  Ex. C, Jackson Decl. ¶¶ 7-14.  In particular, none of the Defendants conduct any business activities—let alone alleged "infringing activities"—in Texas or in the United States.  *Id.*, ¶¶ 7-14.  None of the Defendants manufacture, design, sell, offer to sell, or ship any of the accused products.  *Id.*, ¶¶ 7-14.  And Stingray provides no allegations in the complaint (because they cannot) that any of the Defendants manufacture, design, sell, offer to sell, or ship any of the accused products.  To the contrary, the Defendants, all of which are incorporated in Europe and have principal places of business in Europe, develop only products that can be used in Europe and not in the United States, i.e., the products are designed to be in compliance with European electrical specifications.  *Id.*, ¶¶ 7-14.  Indeed, none of the Defendants solicit customers in Texas, maintain offices in Texas, or have employees in Texas.  *Id.*, ¶¶ 7-14.

The foregoing facts confirm that the Defendants do not place the accused products into the "stream of commerce," do not intend for any of their products—let alone the accused products—to be sold in Texas or the United States, and have not purposefully directed activities at Texas residents.  To establish the required minimum contacts under a stream of commerce theory, a plaintiff must show that a defendant "delivers its products into the stream of commerce with the

expectation that they will be purchased by customers in the forum state." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-298 (1980).[7]   The Federal Circuit has clearly held that "the 'stream of commerce' theory is ***inapplicable***" where—as is the case here—a defendant does not manufacture nor exercise control over the manufacture of the accused products.  *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1362 (Fed. Cir. 1998) (emphasis added); *see, e.g., B/E Aerospace, Inc. v. Zodiac Aerospace*, No. 2:16-cv-01417-JRG-RSP, 2018 U.S. Dist. LEXIS 220294 at *12–13 (E.D. Tex. Nov. 30, 2018) (finding no personal jurisdiction over a foreign company that did not manufacture or distribute the products at issue); *Good Sportsman Mktg. LLC v. Li & Fund Ltd.*, No. 6:07-cv-395, 2010 U.S. Dist. LEXIS 150063 at *9–10 (E.D. Tex. May 12, 2010) ("Where a defendant does not manufacture the accused product and does not otherwise exert control over or consort with other parties to indirectly manufacture or sell the accused product, the stream of commerce theory is inapplicable.").

The facts of this case are nothing like the facts of a normal "stream of commerce" personal jurisdiction case where an operating foreign defendant manufactures the accused products and knowingly sends them specifically into a given forum for the purpose of selling those products to the citizens of that forum.  The facts here are closer to the facts in *Red Wing*, *B/E Aerospace*, and *Good Sportsman Marketing*—none of the Defendants manufacture, design, sell, offer to sell, or ship any of the accused products.  As such, the Defendants have no role in putting the accused products into the stream of commerce and are not subject to this Court's specific personal

---

[7] "The precise requirements of the stream-of-commerce theory of jurisdiction remain unsettled." *Celgard*, 792 F.3d at 1381.  Specifically, neither the Federal Circuit, "nor the Supreme Court, has decided whether stream-of-commerce jurisdiction requires merely placing goods into the stream of commerce with the expectation that they would be purchased in the forum state, or if 'something more' is required, i.e., the purposeful direction of activities toward the forum."  *Celgard*, 792 F.3d at 1380.  In any case, even the lowest potential hurdle that would merely require Defendants to have placed goods into the stream of commerce is not satisfied here.

jurisdiction.

> **b.   *The Contacts of the Domestic Entities Should Not Be Imputed to Any of the Defendants.***

To the extent Stingray asserts that the activities of the Domestic Entities should be considered in evaluating personal jurisdiction over the Defendants, that argument should be rejected.   Here, not only has Stingray not alleged facts sufficient to support the imputation, the Domestic Entities and the Defendants are wholly separate entities, and the contacts of the Domestic Entities should not be imputed to the Defendants.  *See Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990) ("[T]he mere existence of a parent-subsidiary relationship will not support the assertion of jurisdiction over a foreign parent.").

This Court has reiterated that "[t]o impute the contacts of a third party to the defendant under an alter ego theory, the lines between the defendant and the third party must become 'so blurred that the two become one.'"  *Fellowship Filtering Techs.*, 2016 U.S. Dist. LEXIS 195917 at *6.  And "[t]o impute the contacts of a third party to the defendant under an agency theory, [plaintiff must show that] the defendant [exercises] control over the third party's activities in the forum by 'directing its agents or distributors to take action there.'"  *Fellowship Filtering Techs.*, 2016 U.S. Dist. LEXIS 195917 at *5-6 (quoting *Daimler*, 571 U.S. at 135 n.13).

Here, the Domestic Entities and each of the Defendants are separate and distinct corporate entities that strictly observe distinct corporate formalities, i.e., the lines between them are not "so blurred that the two become one" under an alter ego theory, and there is no control between any of the Defendants over the Domestic Entities that "pervade[s] the agent's dealings with the forum" under an agency theory.  *Fellowship Filtering Techs.*, 2016 U.S. Dist. LEXIS 195917 at *5-6; Ex. C, Jackson Decl. ¶¶ 21-24.

The complaint suggests nothing more than a formal corporate relationship between the

Domestic Entities and the Defendants, which the Fifth Circuit has held cannot justify a finding of "alter egos."  *See Hargrave*, 710 F.2d at 1159-1160.  In particular, each of the Domestic Entities and each of the Defendants are separate and distinct corporate entities from each other that observe distinct corporate formalities.  Ex. C, Jackson Decl. ¶¶ 7-24.  For example, each of the Domestic Entities has its own separate headquarters and offices that are separate and distinct from the headquarters and offices of the Defendants.  *Id.*, ¶¶ 16-24.  Each of the Domestic Entities maintains separate accounting systems, employees, bank accounts, tax returns, and financial statements from those of the Defendants.  *Id.*, ¶¶ 21-24.  The Domestic Entities do not have a general commonality of directors or officers with the Defendants, as at most only two executives are common between any of the Domestic Entities and any of the Defendants.  *Id.*, ¶¶ 21-24.  None of the Domestic Entities operate with grossly inadequate capital.  *Id.*, ¶¶ 21-24.  And the Domestic Entities receive business other than, or in addition to, business provided by the Defendants.  *Id.*, ¶¶ 21-24.

Moreover, none of the Defendants exercise control over the Domestic Entities' daily activities, and none of the Defendants direct any of the Domestic Entities to take action specifically in Texas or in the United States.  *Id.*, ¶¶ 21-24.  The daily activities of the Domestic Entities in Texas and in the United States are controlled and directed by the Domestic Entities, i.e., the directors and officers of the Domestic Entities.  *Id.*, ¶¶ 21-24.

By contrast, Stingray does not provide facts in its complaint—beyond the ownership of the Domestic Entities—that would show that the Domestic Entities are actually alter egos or agents of the Defendants.  And even the evidence Stingray does cite is cherry-picked so as to not paint the complete picture.  For example, Stingray goes to great lengths to cite numerous times throughout the complaint a Legrand *2020 Universal Registration Document* to support its proposition that the activities of the Domestic Entities should be imputed to the Defendants.  Despite Stingray's

apparent careful review of the document, Stingray failed to acknowledge to the Court that the same document expressly states that "Legrand's business is local, i.e., country-specific," and that "[t]he [Legrand] Group's subsidiaries in each country are given significant latitude to manage their business and staff."  *See 2020 Universal Registration Document*, LEGRAND, pp. 31, 42, 47, available                                                                                                                at https://www.legrandgroup.com/sites/default/files/Documents_PDF_Legrand/Finance/2021/autres /Legrand_URD_2020_1620039999.pdf (last visited September 8, 2021).

The foregoing facts and Stingray's deficient complaint with respect to facts relevant to the alter ego or agency analysis confirm that the Domestic Entities are not alter egos of the Defendants, nor agents of the Defendants for purposes of specific personal jurisdiction.  All that can be shown between the Domestic Entities and the Defendants is the typical and ordinary parent-subsidiary relationship.  But "[g]enerally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent."  *Hargrave*, 710 F.2d at 1159.  While the Fifth Circuit does recognize that "where the parent totally controls the actions of the subsidiary so that the subsidiary is the mere alter ego of the parent, jurisdiction is appropriate over the parent as well," it also recognizes that "Texas courts are loathe to merge the separate legal identities of parent and subsidiary unless the latter exists as a mere tool or 'front' for the parent, or the corporate fiction is utilized to achieve an inequitable result, or to conceal fraud or illegality"—notably, ***none of those exceptions apply here***. *Seitz v. Envirotech Sys. Worldwide Inc.*, 513 F. Supp. 2d 855, 865 (S.D. Tex. 2007) (internal citation omitted); *Miles v. Am. Tel. & Tel. Co.*, 703 F.2d 193, 195 (5th Cir. 1983).  Indeed, this Court has held that "[a]s a general matter, the corporate form should not be lightly disregarded,"

and that "the typical corporate relationship between a parent and subsidiary, including one hundred percent stock ownership and identity of directors and officers, is not a sufficient basis to impute the contacts of a third party to the defendant under an alter ego theory." *Fellowship Filtering Techs.*, 2016 U.S. Dist. LEXIS 195917 at *6.

Maintaining respect for the corporate form, this Court has held that in order "[t]o impute the contacts of a third party to the defendant under an alter ego theory, the lines between the defendant and the third party must become 'so blurred that the two become one,'" and similarly that "[t]o impute the contacts of a third party to the defendant under an agency theory, [plaintiff must show that] the defendant [exercises] control over the third party's activities in the forum by 'directing its agents or distributors to take action there'" such that "the parent company's control over the agent [] pervade[s] the agent's dealings with the forum." *Id.* at *5–6. Here, as has been shown above, the lines between the Domestic Entities and the Defendants are not "so blurred that the two become one," and there is no control between any of the Defendants over the Domestic Entities that "pervades the agent's dealings with the forum." Stingray has not shown, even at a *prima facie* level, otherwise.

The relationship between the Defendants and the Domestic Entities in this case are that of distinct and separate corporate entities, similar to the corporations in *Brooks & Baker v. Flambeau, Inc.*, 2011 U.S. Dist. LEXIS 112568 (E.D. Tex. Sept. 30, 2011). In that case, the Court refused to find a subsidiary to be a mere alter ego of a parent despite the facts that the parent owned 100% of the subsidiary's stock and that the two companies shared a few officers and directors in common. *Brooks & Baker*, 2011 U.S. Dist. LEXIS 112568, at *14 (finding that the two companies were not alter egos because the parent did not exercise control over the subsidiary's general policy or daily operations, the companies had separate headquarters, accounting systems, corporate formalities,

financial statements, and board meetings).

This case also bears similarities to *Fellowship Filtering Techs.*, 2016 U.S. Dist. LEXIS 195917.  In that case, the plaintiff tried to argue that personal jurisdiction was proper over the defendant based on the defendant's own actions and based on the actions of related entities, asserting that:

> (1) assets were transferred between [the defendant] and the [related entities] for no agreed-to consideration; (2) [the defendant] and the [related entities] shared the same controlling member; (3) the [related entities] maintained approval authority over any business partnership of [the defendant]; (4) the [related entities] approved budget requests made by [the defendant]; (5) the [related entities] hold[] out [the defendant] as being part of a tightly integrated [group]; (6) [the defendant] employees gave presentations in which they identified themselves as being part of the [related entities]; (7) the [] entities operate as a single unit and each of the [] entities act as an agent of the other [] entities; and (8) the [related entities] exercises control over [the defendant].

*Fellowship Filtering Techs.*, 2016 U.S. Dist. LEXIS 195917 at *10–11.  This Court, however, refused to impute the related entities' actions to the defendant, instead finding that all the above support supplied by the plaintiff demonstrated "***nothing more than a typical parent-subsidiary corporate relationship***."  *Id.* at *11–12 (emphasis added).  This Court held that generalized and "conclusory statements, without more, do not counsel in favor of disregarding the corporate form." *Id.* at *12–13.  Similarly, Stingray's assertions in its complaint are nothing more than generalized conclusory statements that demonstrate "nothing more than a typical parent subsidiary corporate relationship" between the Defendants and the Domestic Entities, including its bald and unsupported allegations that the Defendants directly control the daily operations of its subsidiaries.

In light of the foregoing, the Defendants do not have sufficient contacts with this forum, or the United States as a whole, to make the exercise of specific personal jurisdiction over them appropriate, and the contacts of the Domestic Entities cannot be imputed to any of the Defendants. Accordingly, Stingray has not, and cannot, meet its burden of affirmatively establishing the first

two prongs of the specific jurisdiction test, and therefore the Defendants are not subject to specific personal jurisdiction in this case.

**B.      Stingray Fails to Plead How Stationary Products Infringe Patents Requiring Mobile.**

Stingray accused Defendants of infringing its patents by making and selling products that include light switches, hardwired shades, and plug-in switches.  No one, however, would consider those switches or shades to be "mobile."  Yet, Stingray's complaint alleges exactly that: that these stationary products infringe claims from U.S. Patent Nos. 6,958,986; 6,961,310; and 7,027,426—each of which require the accused products be "mobile."

For patent infringement, a plaintiff's claim is fatally flawed when it fails to plead allegations that allow a reasonable inference that the accused devices satisfy every claim limitation.  "[A] plaintiff cannot assert a plausible claim for [patent] infringement under the *Iqbal*/*Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).  Instead, "[t]here must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id*.  Without such allegations, a court should dismiss the pleadings for plaintiff's failure to state a claim because their infringement pleadings are "constructed upon a fatally flawed foundation." *Ruby Sands LLC v. Am. Nat'l Bank of Texas*, No. 2:15-CV-1955-JRG, 2016 WL 3542430, at *4 (E.D. Tex. June 28, 2016) (Gilstrap, J.).

Federal Circuit precedent supports that any permissible construction of "mobile" node must exclude fixed or stationary devices. *Eon Corp. IP Holdings LLC v. Silver Springs Network*, 815 F.3d 1314 (Fed. Cir. 2016) (reversing a district court's claim construction because it did not construe the terms "portable" and "mobile" units to exclude "fixed" or "stationary" units.).  Like *Eon*, the Stingray patents "provide guidance about what the…. 'mobile' term[] mean[s]," none of

which encompass any fixed or stationary devices.  *Eon Corp.*, 815 F.3d at 1317;'310 patent at 5:5-8 ("The [mobile] nodes 30, such as laptop computers, personal digital assistants (PDAs) or mobile phones, are connected by wireless communication links 32 as would be appreciated by the skilled artisan."); '426 patent at 4:63-66 (same); '986 patent 9:5-8 ("The wireless mobile nodes 12 *a*-12 *h* are operating in a mobile environment. These systems may be ground based and/or airborne, whereby they are continuously entering into and dropping out of the network 10."); *see id.*, 1:65-2:4, 53:15-21.   In addition, Stingray's patents purportedly describe and claim inventions for solving problems caused by a node's movement.   '986 patent at 1:65-2:4 ("Scheduling time slots for wireless communication systems operating with directional antennas, ***particularly when the wireless communication systems are mobile,*** is complex. In such a dynamic network, ***mobile*** communication systems are continuously entering into and dropping out of the network."); '310 patent at 1:46-55 ("***Because [a Mobile Ad-Hoc Network network (MANET)] topology changes arbitrarily as the nodes move***, information is subject to becoming obsolete, and different nodes often have different views of the network, both in time (information may be outdated at some nodes but current at others) and in space (a node may only know the network topology in its neighborhood usually not far away from itself).") (emphasis added); '426 patent at 1:49-55 (same); *see also* '310 patent at 1:56-2:50; '426 patent at 1:56-2:36.   No permissible construction of "mobile" node, according to the Stingray patents, can encompass stationary devices because such a construction would effectively read-out the "mobile" node requirement from the claims and contradict each patents' purported invention.   *See Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1017 (Fed. Cir. 2006) ("[The Federal Circuit has] held that in certain instances, the 'all elements' rule forecloses resort to the doctrine of equivalents because, on the facts or theories presented in a case, a limitation would be read completely out of the claim--*i.e.*,

the limitation would be effectively removed or 'vitiated.'");  *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 2003) (A "construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.").

Stingray's complaint is thus "constructed upon a fatally flawed foundation" because it accuses stationary products of infringing claims that require infringing devices be "mobile."  *Ruby Sands*, 2016 WL 3542430 at *4.  In *Ruby Sands*, the Court faced this identical issue and dismissed plaintiff's pleadings because they "makes no factual allegations that even remotely suggest that [defendant]…, makes, uses, offers to sell, or sells ***mobile devices*."  *Ruby Sands*, 2016 WL 3542430 at *4 (emphasis in original).  Like *Ruby*, Stingray's complaint alleges the following stationary products are the infringing "mobile" nodes:  light switches, dimmers, plugs, shades, hubs, and ceiling mount sensors.  *See* Dkt. 1, ¶¶ 46-50, 54-55, 58, 67, 86, 103.

The accused products fall squarely into two categories, neither of which is mobile.  *See* Ex. A (identifying accused products for each patent).  First, and like typical light switches, many accused products are attached to a house or building like those shown below on the left:



*See Smart Lighting from The radiant® Collection*, LEGRAND, NORTH & CENTRAL AMERICA, https://www.legrand.us/radiant/smart-lighting (last visited June 2, 2021).

Dkt. 1, ¶ 54; *see* Ex. A.  Second, the remaining accused products, like the plug-in switches and dimmers shown above on the right, are stationary because they must remain plugged into power outlets to work.   Dkt. 1, ¶ 54; *see* Ex. A.  Consequently, these accused devices are stationary devices and can never be considered "mobile" as required by Stingray's claims.  *Eon Corp.*, 815 F.3d at 1322 ("Under no permissible construction of the term[]… 'mobile'—given their ordinary meaning in the context of the [asserted] patents—could a reasonable jury have found that [devices affixed to a house] infringe the asserted claims.").

Stingray fails to sufficiently plead any plausible theory that shows how the accused products, such as light switches and hardwired shades, infringe patent claims that require a "mobile" node.  Three of Stingray's patents—the '986, '310, and '426 patents—each have such a requirement.  Without any plausible theory, the Court should dismiss Stingray's infringement counts for each of these patents.

To the extent that Stingray alleges Defendants have induced infringement of a "mobile"

node based on how the accused devices interact with a third-party device, the complaint has not sufficiently pled such a theory.  The complaint includes a bare assertion of a theory of "inducing infringement" for each patent with the "mobile" node requirement.  *See* Dkt. 1, ¶¶ 63, 82, and 99.  For such an indirect infringement theory, at a minimum, Stingray's complaint must plead facts to support a reasonable inference of direct infringement.  *Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687 (Fed. Cir. 1986) ("Absent direct infringement of the patent claims, there can be neither contributory infringement, nor inducement of infringement.").  As explained above, however, the complaint fails to sufficiently plead any facts that show how the accused products (or any other product) directly infringes claims with the "mobile" node requirement.  Moreover, the complaint does not plead any facts necessary to address additional requirements of indirect infringement, which further require "pleading facts sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite 'direction or control' over the others' performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party."  *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016).  Therefore, Stingray improperly pled any induced infringement theory advanced and the Court should dismiss any such theory.

Likewise, and to the extent that Stingray alleges that the accused products are covered under the doctrine of equivalents of "mobile" nodes or "mobile ad hoc network," no such theory was pled in its complaint.  Without doing so, the Court should not permit Stingray to belatedly raise such a theory.  Moreover, any theory that the accused products infringe the claims under the doctrine of equivalents is foreclosed because such a theory would read-out the "mobile" node requirement from the claims and contradict each patent's purported invention.  *See Depuy Spine*, 469 F.3d at 1017; *Renishaw*, 158 F.3d at 1250. If Stingray attempts to belatedly raise an

infringement theory predicated on the doctrine of equivalents, the Court should dismiss that theory for the same reasons that it should reject Stingray's literal infringement theory.

## VI.    CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court to dismiss the claims against Defendants with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  Alternatively, Defendants respectfully request that the Court dismiss with prejudice pursuant to Rule 12(b)(6) Stingray's infringement counts for U.S. Patent Nos. 6,958,986; 6,961,310; and 7,027,426 because the claims from these patents require the accused products be "mobile."

Dated:  September 16, 2021                    Respectfully submitted,


                                              */s/ Katherine Vidal*
                                              Katherine Vidal,
                                              CA State Bar No. 194971
                                              KVidal@winston.com
                                              **Winston & Strawn LLP**
                                              275 Middlefield Road, Suite 205
                                              Menlo Park, CA 94025
                                              Telephone: (650) 858-6500
                                              Facsimile: (650) 858-6559


                                              Jeanifer Parsigian
                                              *Pro Hac Vice* Submitted
                                              JParsigian@winston.com
                                              **Winston & Strawn LLP**
                                              101 California Street
                                              San Francisco, CA 94111-5840
                                              Telephone: (415) 591-1000
                                              Facsimile:  (415) 591-1400


                                              Ahtoosa Dale
                                              TX State Bar Number 2410144
                                              ADale@winston.com
                                              **Winston & Strawn LLP**
                                              2121 N. Pearl Street, Suite 900,
                                              Dallas, TX 75201
                                              Telephone: (214) 453-6500
                                              Facsimile:  (214) 453-6400


                                              Matthew Hopkins
                                              *Pro Hac Vice* Submitted
                                              MHopkins@winston.com
                                              **Winston & Strawn LLP**
                                              1901 L Street, N.W.
                                              Washington, D.C. 20036-3506
                                              Telephone: (202) 282-5000
                                              Facsimile:  (202) 282-5100


                                              Juan Yaquian
                                              *Pro Hac Vice* Submitted
                                              jyaquian@winston.com
                                              **Winston & Strawn LLP**
                                              800 Capitol St., Suite 2400,
                                              Houston, TX 77002-2925


DEFENDANTS' MOTION TO DISMISS                                          26

Telephone: (713) 651-2600
Facsimile:  (713) 561-2700

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing document was served on all parties who have appeared in this case on September 16, 2021, via the Court's CM/ECF system.

*/s/ Katherine Vidal*
Katherine Vidal