IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| STINGRAY IP SOLUTIONS, LLC, | § § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO.  2:21-CV-00201-JRG (LEAD CASE) |
| LEGRAND, LEGRAND FRANCE, BTICINO SPA, LEGRAND SNC, | § § § § § | |
| *Defendants*. | § § | |
| v. | § § | CIVIL ACTION NO.  2:21-CV-00193-JRG (MEMBER CASE) |
| AMAZON.COM, INC., AMAZON.COM SERVICES LLC, | § § § § | |
| *Defendants*. | § | |

# **ORDER**

Before the Court is Defendants Amazon.com, Inc. and Amazon.com Services, LLC's (collectively, "Amazon") Motion to Transfer Venue to the Northern District of California (the "Motion") filed in Case No. 2:21-cv-201 (the "-201 case"). (Dkt. No. 67). Having considered the Motion, the related briefing, and the relevant authorities, the Court concludes that the Motion should be **DENIED**.

Also before the Court is Amazon's Opposed Motion to Continue Claim Construction Hearing to Allow Time for the Court to Resolve Pending Motion to Transfer Venue (the "Motion to Continue") also filed in the -201 case. (Dkt. No. 86). In light of the Court's ruling on the

1

Motion and for the reasons discussed herein, the Court finds that the Motion to Continue should be **DENIED**.

I.   **BACKGROUND**

Plaintiff Stingray IP Solutions, LLC ("Stingray") filed a multi-patent complaint against Amazon, Ring LLC ("Ring"), eero LLC ("eero"), and Immedia Semiconductor LLC ("Blink") on June 1, 2021, in Case No. 2:21-cv-193 (the "-193 case"). (Case No. 2:21-cv-193, Dkt. No. 1). Ring, eero, and Blink are subsidiaries of Amazon. (Case No. 2:21-cv-193, Dkt. Nos. 19-3; 19-4; 19-5; 19-6; 19-7; 19-8). Stingray alleged that Amazon, Ring, eero, and Blink infringe U.S. Patent Nos. 6,958,986 (the "'986 Patent"), 6,961,310 (the "'310 Patent"), 6,980,537 (the "'537 patent"), and 7,027,426 (the "'426 Patent") (collectively, the "Asserted Patents"), which each cover various aspects of communication, routing, and organizing network nodes within wireless communication networks. (Case No. 2:21-cv-193, Dkt. No. 1 at 1, 20). Specifically, Stingray complains that Amazon, Ring, eero, and Blink infringe the Asserted Patents through their manufacture and sale of devices, utilizing Wi-Fi, ZigBee, and Z-Wave protocols. (*Id.* at 21-22). In Stingray's preliminary infringement contentions, Stingray accuses 97 products of infringing its patents, including eight eero mesh networking devices, six Blink security cameras, and 42 Ring security products (collectively, the "Accused Products"). (Case No. 2:21-cv-201, Dkt. No. 69).

On July 30, 2021, Ring, eero, and Blink jointly filed a Motion to Sever for Misjoinder and Motion to Dismiss for Improper Venue. (Case No. 2:21-cv-193, Dkt. No. 19). On that same day, Amazon filed its answer. (Dkt. No. 20). On August 19, 2021, Stingray filed its Notice of Voluntary Dismissal Without Prejudice Pursuant to Rule 41(a)(1)(A)(i), and based thereon, the Court dismissed Ring, eero, and Blink on August 27, 2021. (Dkt. Nos. 31; 35). As a result, Amazon is the the only remaining defendant in the -193 case. On August 24, 2021, the Court consolidated the -193 case with the lead case, the -201 case, for all pretrial issues. (Dkt. No. 34).

On September 29, 2021, the Court held a Scheduling Conference and entered a corresponding Docket Control Order on October 25, 2021. (Case No. 2:21-cv-201, Dkt. No. 50). On January 14, 2022, Amazon filed the instant Motion. (Dkt. No. 67). The Claim Construction hearing for this case is presently scheduled for March 29, 2021, and trial is set for October 3, 2022. (Dkt. No. 50).[1]

## II. LEGAL STANDARD

The parties do not dispute the legal standard and applicable legal principles the Court is to apply to resolve this motion. In evaluating a motion to transfer pursuant to § 1404(a), the Court considers the Court of Appeals for the Fifth Circuit's non-exhaustive list of private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The private-interest factors include (1) "the relative ease of access to sources of proof"; (2) "the availability of compulsory process to secure the attendance of witnesses"; (3) "the cost of attendance for willing witnesses"; and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public interest factors include (1) "the administrative difficulties flowing from court congestion"; (2) "the local interest in having localized interests decided at home"; (3) "the familiarity of the forum with the law that will govern the case"; and (4) "the avoidance of unnecessary problems of conflict of laws." *Id.*

To support a claim for transfer under § 1404(a), a movant must demonstrate that the transferee venue is "clearly more convenient" than the current district. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). Absent such a showing, plaintiff's choice of venue must be respected. *Id.* "When deciding a motion to transfer under § 1404(a), the

---

[1] Under the Court's practice, once cases are consolidated for management purposes, all motions are filed in the lead case (here, the -201 case) even if—as here—they relate solely to issues on parties in the member case (here, the -193 case).

3

Court may consider undisputed facts outside of the pleadings, such as affidavits or declarations, but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Hammers v. Mayea-Chang*, No. 2:19-cv-181, 2019 WL 6728446, at *4 (E.D. Tex. Dec. 11, 2019) (collecting cases).

## III.  DISCUSSION

The threshold inquiry to a motion to transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I*, 371 F.3d at 203.  Stingray does not dispute that the Complaint could have been filed in the Northern District of California ("NDCA").[2]  Accordingly, the Court finds that the threshold question is satisfied and next turns to the convenience factors below.

### A.  Private Interest Factors

#### 1.  The Relative Ease of Access to Sources of Proof

The first private interest factor this Court analyzes is the relative ease of access to sources of proof, including documentary and other physical evidence. *See Volkswagen II*, 545 F.3d at 315. Notwithstanding well-known advances in technology and the digitization of data, courts nonetheless continue to consider the relevance and importance of the physical location of these sources. *See id.* at 316; *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009).  Parties must specifically identify and locate sources of proof and explain their relevance. *Utterback v. Trustmark Nat'l Bank*, 716 F. App'x 241, 245 n.10 (5th Cir. 2017); *AGIS Software Dev. LLC v. Huawei Device USA Inc.*, No. 2:17-cv-513, 2018 WL 2329752, at *5 (E.D. Tex. May 22, 2018).

---

[2] "A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion." Local Rule CV-7(d).

Amazon argues that Amazon's Echo products were designed and developed in the San Francisco Bay Area in NDCA. (Dkt. No. 67 at 9). Amazon further contends that a large portion of technical documents related to those products are stored and accessed from Amazon's San Francisco Bay Area offices. (*Id.* at 11). Amazon alleges that its finance and marketing teams are based at its headquarters in Seattle, Washington, so that any documents related to the issue of damages are located closer to NDCA than the Eastern District of Texas ("EDTX"). (*Id.* at 12). Amazon also argues that eero, which is headquartered in San Francisco, California, maintains documents relating to its accused mesh networking products, and Ring, which is headquartered in Santa Monica, California, "presumably maintains documents related to its home security products" there. (*Id.*). Amazon finally argues that evidence relevant to Stingray is likely based in California because its parent company, Acacia Research Group LLC ("Acacia"), and corresponding witnesses are located there. (*Id.*).

Stingray characterizes Amazon's statements as incomplete. (Dkt. No. 71 at 17). Stingray argues that its documents are located on its servers at its headquarters in EDTX and at the offices of its outside counsel in Dallas, Texas. (*Id.*). Stingray contends that as discovery has progressed, "all documents produced to date, including those of Amazon and its subsidiaries, have been produced electronically" and are on Stingray's outside counsel's servers located in Dallas. (*Id.*).

Amazon broadly asserts that documents related to eero's products are maintained at its headquarters in San Francisco but fails to specifically identify individual documents or even classes of documents. (*See* Dkt. Nos. 67 at 12; 67-11 at 4). Amazon further presumes that Ring "presumably maintains documents related to its home security products" at its California headquarters. (Dkt. No. 67 at 12). Parties must bring the Court reliable and reasonably specific facts in this regard. Amazon has failed to do so, at least as to eero and Ring. Accordingly, this

5

Court cannot fairly afford any weight to the situs of these documents. *See Utterback*, 716 F. App'x at 245 n.10 (crediting no weight as to movant's failure to specify evidence in the transferor venue).

In its Motion, Amazon asserts that relevant financial documents, which includes sales figures for the accused Amazon products, are maintained by its finance and marketing teams in Seattle, Washington. (Dkt. No. 67 at 12). However, Amazon does not provide information to support this contention. (*Id.*). While Amazon cites to Lakshmi Venkatraman's Affidavit, which states that the finance and marketing teams responsible for Echo devices are primarily based in Seattle, such leaves the Court to assume that the relevant documents are also located there. (Dkt. No. 67-27 at 2). The Court should not have to make this leap of logic, especially in today's world of remote servers far from the human workforce. Regardless of actual location, Amazon's financial documents are clearly in neither district and must be transported. This Court is unconvinced that transferring such likely electronic dockets from Seattle to NDCA is any more convenient than sending them to EDTX. *See PersonalWeb Technologies v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *14 (E.D. Tex. Mar. 21, 2013) ("Amazon's documents are located in Seattle, so Amazon will have to transport them regardless of whether the case is tried in Tyler or San Francisco. The Court is skeptical of the true 'convenience increase' . . .").

Amazon also points to Lab126, an Amazon subsidiary located in NDCA, and states that technical documents and source code related to Amazon's Echo products, specifically the wireless communications features of these devices, are generated by engineers and stored and accessed by them, from their offices in which they work—primarily in Sunnyvale, California. (Dkt. Nos. 67 at 8-9; 67-27 at 1-2). Amazon notes that a six-person team, which includes five engineers, is located in Austin, Texas, and works on wireless implementation for Amazon Echo devices. (Dkt.

Nos. 67 at 9; 67-27 at 2; 73 at 2). "This team does not have unique technical knowledge that engineers based in the San Francisco Bay Area do not have." (Dkt. No. 67-27 at 2). By Amazon's own admission, Lab126 electronically maintains similar documentation in Austin and Sunnyvale.

Stingray maintains documents on servers at its headquarters in EDTX and with its outside counsel in Dallas, Texas. (Dkt. No. 71-15 at 1-2). The Court affords such information little weight because, like Amazon, Stingray fails to specify particular documents, or even classes of documents, and does not identify their relevance.[3]

Ultimately, this factor is neutral. Amazon cites to evidence located in NDCA but fails to specifically identify both particular documents and their relevance to this case. As to financial documents which may be in Seattle, the Court remains unconvinced that electronic transfer to NDCA is less burdensome than to EDTX. Finally, while Amazon points to evidence located in both NDCA and Austin, Texas, the likely duplicative nature of such does not move the transfer needle in either direction.

### 2. The Availability of Compulsory Process to Secure the Attendance of Witnesses

"A court cannot compel non-party witnesses to travel more than 100 miles from their homes or work to provide testimony." FED. R. CIV. P. 45(c)(1)(A). "[W]hen there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor. *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.3 (Fed. Cir. Sept. 25, 2018) (citing *AGIS Software*, 2018 WL 2329752, at *6).

Amazon cites several potential witnesses that it may call at trial. Some are identified specifically but others are only mentioned generally. Amazon also suggests potential witnesses

---

[3] Although not dispositive, the Court notes that much, if not most, of the information in this case is available electronically. *See In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) ("[T]he question is *relative* ease of access, not *absolute* ease of access.").

from certain subsidiaries. Since Amazon's subsidiaries have been dismissed from this case, the Court errs on the side of considering them as "non-party witnesses" for purposes of this factor. Further, if a party does not identify the willingness of any non-party witnesses, the Court will assume that they are unwilling. Any witness considered unwilling under this factor will not be considered under the cost-of-attendance-for-willing-witnesses factor. To do otherwise invites improper double-counting.

Amazon argues that numerous witnesses who could be required to testify are located in NDCA. Amazon discusses two prior-art witnesses, Charles Perkins and Johnny Chen, who are located in NDCA. (Dkt. No. 67 at 13-14). Amazon also identifies Lakshmi Venkatraman and Ravi Ichaparapu, who are also possible witnesses in NDCA. (Dkt. No. 73 at 3). Amazon generally raises the specter of witnesses from Lab126, Ring, eero, and Blink. Lab126's engineers are responsible for the technical design and development of allegedly infringing products and based in NDCA. (Dkt. No. 67 at 9). eero, along with its engineers, is located in San Francisco. (*Id.* at 7). Ring is based in Santa Monica, California, which is not in NDCA. (*Id.*). Blink is located in Andover, Massachusetts. (*Id.*).

Stingray argues that Amazon has manufactured convenience by cherry-picking prior-art witnesses in or near NDCA "out of more than one hundred others." (Dkt. No. 71 at 16). Stingray also states that Amazon has omitted key facts about eero because it has 41 employees in Texas. (*Id.*). Stingray also notes that Lab126 has employees located in Austin who could readily testify in Marshall. (Dkt. No. 78 at 7). Stingray also points out that Ring is outside of NDCA and Blink is in New England. (*Id.* at 8).

Amazon identifies four witnesses who can be subpoenaed to testify in NDCA. Amazon also points to general sources of witnesses, such as Lab126, eero, Ring, and Blink; however, this

Court cannot make determinations concerning witnesses whom the parties do not specifically identify. *See Diem LLC v. BigCommerce, Inc.*, No. 6:17-cv-186, 2017 WL 6729907, at *3 (E.D. Tex. Dec. 28, 2017) ("[L]itigants should not only specifically identify potential unwilling witnesses, but also should identify the relevancy and materiality of the information such witnesses would provide and therefore the foreseeability that a particular witness would be deposed, called to trial, or both.").

The Inventors of the Asserted Patents are not subject to subpoena power in either district as all but one are located in Florida. (Dkt. No. 67-6 at 4-5). The remaining inventor is located in New Jersey, so this consideration has no bearing on the analysis of this factor. (*Id.*).

Stingray objects to Amazon's identified prior-art witnesses as being cherry-picked to manipulate convenience, (Dkt. No. 71 at 16), and also states that "there is no reason to expect any of the non-party prior art witnesses to be called at trial." (*Id.* at 15). However, Stingray has produced no evidence to support its claim of cherry-picking. Further, the Federal Circuit has previously rejected such arguments. *See In re Juniper Networks, Inc*, 14 F.4th 1313, 1319 (Fed. Cir. 2021) ("We have also rejected the district court's categorical assumption that defendants are likely to call few if any of the proposed party witnesses or prior-art witnesses that are identified for purposes of supporting transfer motions.").

On balance, the Court finds that this factor weighs in favor of transfer. Amazon specifically identifies unwilling witnesses who can be compelled to testify in NDCA, and no such witnesses are identified as subject to this Court's subpoena power.

### 3. The Cost of Attendance for Willing Witnesses

"When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. "The

convenience of the witnesses is probably the single most important factor in transfer analysis." *Genentech*, 566 F.3d at 1343 (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)).

Amazon proposes employees of Lab126, who are engineers who design and develop the accused technology, as likely willing witnesses. (Dkt. Nos. 67 at 15; 67-27). Amazon states that EDTX is more than 1,500 miles from its offices in Sunnyvale, California, and travel to this district would be substantially inconvenient. (Dkt. No. 67 at 15). Amazon also argues that travel for Stingray's witnesses, some of which are located in Southern California, would be more convenient in NDCA. (*Id.* at 15–16).

Stingray responds, "Amazon's Motion fails to specifically identify any willing witness that it will call to trial. Instead, Amazon's analysis of witnesses is vague, identifies no witness by name or relevant knowledge, and disregards the willingness of any witness to attend trial." (Dkt. No. 71 at 12). Stingray continues that Amazon does not specifically identify or explain any basis for Amazon's witnesses in Sunnyvale, California, to be relevant to trial of this case. (*Id.*). Stingray also argues that Amazon fails to account for party witnesses presumably located at its headquarters in Seattle, Washington. (*Id.* at 13).

Stingray puts forward three willing witnesses: (1) Craig Yudell, president of Stingray, who lives in Austin, Texas, and has relevant knowledge "on ownership, assignments, and licensing of the Asserted Patents, along with the operations and financials for Stingray"; (2) Marc Booth, CEO of Stingray, who lives in Irvine, California, and has relevant knowledge related to the acquisition and management of Stingray's patent portfolio; and (3) Erik Ahroon, Vice President of Business Development at Acacia, who lives in San Clemente, California, and works in Irvine, California.

(*Id.* at 14). Each witness asserts that they are willing to travel to Marshall for trial which they do not view as inconvenient. (*Id.*).

Amazon points to engineers in Sunnyvale, California, who may testify; however, "the Court must weigh the convenience of competing venues based on *specific witnesses* and the relevant evidence they may possess and offer." *Chamberlain Grp., Inc. v. Overhead Door Corp. & GMI Holdings Inc.*, No. 2:21-cv-84, at 7 (E.D. Tex. Sept. 10, 2021), Dkt. No. 84 (emphasis in original). Notably, the Court has already considered any Lab126 engineers under the compulsory process factor. Having already considered them, the Court does not consider them under this factor.

Stingray identifies three willing witnesses: Craig Yudell, Marc Booth, and Erik Ahroon. None are located in either district. Mr. Booth and Mr. Ahroon live in California, while Mr. Yudell lives in Texas. Although all three witnesses indicated that they are willing to travel to Marshall and that Marshall is not inconvenient for them, the Court gives no weight to their perception of convenience. Two of them are closer to NDCA, and one is closer to this District. On balance, this factor slightly disfavors transfer.[4]

        4.    <u>All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive</u>

The fourth private interest factor addresses concerns rationally based on judicial economy. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *6 (E.D. Tex. Nov. 27, 2019); *see also In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010).

Amazon charges that Stingray has manipulated venue. (Dkt. No. 67 at 5, 12). Amazon asserts that Stingray's only business is patent assertion. (*Id.* at 5). Amazon notes that Stingray

---

[4] The Court is careful to note in the present case that Amazon failed to specifically identify any willing witnesses; only three named willing witnesses were put forward; none of these willing witnesses are located in either district; and the only willing witnesses located near the transferee district are two of Stingray's own willing witnesses who are happy to travel to EDTX.

11

was founded in April 2020 and began filing lawsuits in EDTX a few months later. (*Id.*). Amazon also alleges that Stingray is merely a shell company owned by Acacia and that Stingray's representatives are all Acacia's employees. (*Id.* at 6). Amazon contends that Stingray sued Ring, eero, and Blink with no presence in EDTX and that Stingray's voluntary dismissal of them was solely to preserve venue in EDTX against Amazon. (*Id.* at 17).

Stingray responds by first noting that a party's delay in filing a motion to transfer is considered under this factor. (Dkt. No. 71 at 10 (citing *Diem*, 2017 WL 6729907, at *5)). Stingray observes that Amazon litigated this case for seven months before filing this Motion. (*Id.* at 6). Such delay by Amazon has allowed fact discovery to progress materially while claim construction proceedings have now advanced to the briefing stage—with the Court soon to conduct a *Markman* hearing. (*Id.* at 10–11). Stingray points to significant judicial inefficiencies (caused by Amazon's delay) which would result if this case were transferred. (*See id.* at 11). Stingray further asserts that this Court is experienced and familiar with the Asserted Patents. (*Id.*). Stingray alleges that there are two pending lawsuits involving the Asserted Patents before this Court being Case Nos. 2:21-cv-45 and 2:21-cv-46. (*Id.*). Also, Stingray states that in Case Nos. 2:21-cv-43 and 2:21-cv-44, this Court has already conducted a *Markman* hearing regarding the Asserted Patents. (*Id.*).

Amazon replies that it filed its Motion as soon as reasonably possible in light of three events: (1) Defendants Ring, eero, and Blink were voluntarily dismissed in August 2021; (2) Stingray served invalidity contentions in September 2021; and (3) in January 2022, Stingray filed onerous third-party subpoenas on Ring, eero, and Blink, which Amazon states supports its venue-manipulation contention. (Dkt. No. 73 at 5). Amazon states that the only timing requirement regarding its Motion is that transfer motions should be filed and resolved prior to the *Markman*

hearing.  (*Id.* (citing *In re Quest Diagnostics Inc.*, No. 2021-193, 2021 WL 5230757, at *3 (Fed. Cir. 2021)).

While Amazon claims that Stingray has only an ephemeral presence in EDTX, Stingray is located in Frisco, Texas.  (Case No. 2:21-cv-193, Dkt. No. 1 at 1).  Stingray instigated its first lawsuits approximately seven months after organizing in Texas, and it filed this lawsuit more than a year after organizing.  (Dkt. Nos. 1; 67-2 at 2; 67-4).  Stingray's formation in Texas is not "recent" under Federal Circuit precedent.  *See, e.g.*, *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011).  One of Stingray's principals is located in Texas while two others live in California.  Given that Stingray's formation is not recent and one of its principals resides in Texas, the Court concludes that Stingray's presence is not recent and ephemeral.[5]  As such, this Court properly affords some weight to Stingray's presence in EDTX.

It is undisputed that Amazon waited more than seven months to file this Motion, (Case No. 2:21-cv-193, Dkt. No. 1), and approximately five months after Ring, eero, and Blink were dismissed.  (Case No. 2:21-cv-201, Dkt. No. 67).

The voluntary dismissal of Amazon's subsidiaries may have explained Amazon's delay in not filing the Motion in August 2021, but it does not explain or excuse Amazon's delay until January 2022.  The Court is not persuaded by Amazon's argument that because Stingray filed third-party subpoenas on the dismissed subsidiaries in January, this gave rise to new facts that warrants Amazon's dilatory Motion.

Since Amazon's challenge to venue, critical dates have passed, and others are rapidly approaching.  (Case No. 2:21-cv-201, Dkt. No. 50).  Discovery is presently underway; claim

---

[5] Amazon asserts, "[Stingray] does not make or sell any products, let alone make beneficial use of the alleged technology claimed in its patents."  (Dkt. No. 67 at 5).  Such does not equal venue manipulation or support a charge of ephemeral venue.  Weighing all factual conflicts in favor of the non-moving party, the Court disregards these assertions by Amazon.

13

construction briefs have been filed, (*See* Dkt. Nos. 74; 80); the claim construction hearing for this case is scheduled on March 29, 2022, (Dkt. No. 50 at 5); and trial is set in about seven months, (*Id*. at 2).

This Court has held in prior cases that similar periods of delay weighed against transfer. *Core Wireless Licensing S.A.R.L. v. LG Electronics Inc.*, No. 2:14-cv-912, 2016 WL 4265034, at *7 (E.D. Tex. Aug. 12, 2016) ("Defendants have offered no explanation for waiting nearly seven months to file their Motion to Transfer even though several critical dates had already passed, with others rapidly approaching."); *Godo Kaisha IP Bridge 1 v. Broadcom Limited*, No. 2:16-CV-0134, 2017 WL 750290, at *8, *9 (E.D. Tex. Feb. 26, 2017 (holding that a six-month delay in filing their motion to transfer weighed strongly against transfer); *Diem*, 2017 WL 6729907, at *5 (holding that an eight-month filing delay weighed against transfer).

The Asserted Patents are presently pending before this Court in Case No. 2:21-cv-45. Further, the Asserted Patents were previously before this Court in Case Nos. 2:21-cv-43, 2:21-cv-195, 2:21-cv-201, and 2:21-cv-25. Considering this Court's prior experience with and knowledge of the Asserted Patents, this Court is better positioned than NDCA to go forward with this case.

The Court notes Amazon's misinterpretation of Federal Circuit precedent, where it states, "[T]he only timing requirement imposed by Federal Circuit law is that transfer motions should be filed and resolved prior to the *Markman* hearing." (Dkt. No. 73 at 5).  The Court concludes that Amazon would like to utilize this caselaw as both a sword and shield.  Here, Amazon waited more than seven months—until the eve of claim construction—to file its Motion. (Case No. 2:21-cv-193, Dkt. No. 1).  While at the same time, Amazon contends that the Federal Circuit commands this Court to resolve its Motion before claim construction takes place.  The Court rejects Amazon's interpretation.  The Federal Circuit has stated that the Court must "promptly consider[] [a] transfer

14

motion." *Quest Diagnostics*, 2021 WL 5230757, at *3. The Court does not interpret the Federal Circuit's precedent as allowing a party to push the trial court up against the claim construction wall and then demand immediate resolution. Despite its delays, the Court believes it has given Amazon's Motion timely and due consideration.

The Court finds that this factor heavily weighs against transfer. Transferring this case to NDCA would result in a delay which would equal the waste of substantial party expenditures and a waste of equally substantial judicial resources. *See Vistaprint*, 628 F.3d at 1347 ("It is entirely within the district court's discretion to conclude that in a given case the § 1404(a) factors of public interest or judicial economy can be of 'paramount consideration,' and as long as there is plausible support of record for that conclusion[,] we will not second guess such a determination.") (citations omitted).

### B.     Public Interest Factors

The parties agree that the public interest factors are neutral, (*see* Dkt. Nos. 67 at 18–19; 71 at 19), except for the administrative difficulties flowing from court congestion and local interest considerations.

#### 1.     The Administrative Difficulties Flowing from Court Congestion

Amazon argues that this factor is neutral in the transfer analysis because speed to trial when a plaintiff does not make or sell any product that practices the claimed invention and aggressiveness of courts' case schedules are not particularly significant considerations. (Dkt. No. 67 at 18–19). In response, Stingray contends that this factor weighs against transfer because it contends that speed to trial and resolution is the relevant inquiry. (Dkt. No. 71 at 19). The Court agrees that the right to a prompt adjudication is not limited to manufacturing entities. The rights of all patent holders are equally entitled to the Court's attention.

The Court concludes that this factor slightly weighs against transfer.  "To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor."  *Genentech*, 566 F.3d at 1347.  The Federal Circuit has addressed this factor and reiterated that it is "the most speculative of the factors" and "should not alone outweigh th[e] other factors" when they are neutral.  *Juniper*, 14 F.4th at 1322 (citing *Id*.).  This case would most certainly proceed to trial quicker in this district than NDCA.

2.  The Local Interest in Having Localized Interests Decided at Home

Amazon argues that NDCA has a local interest in this dispute because of Amazon's large compliment of engineers working in San Francisco.  (Dkt. No. 67 at 13).  Amazon also notes that the accused infringing sale of eero's products implicate NDCA's local interest because they are designed and developed in San Francisco.  (*Id.* at 18).  Finally, Amazon contends that EDTX has no local interest except as supported by Amazon's fulfillment centers in EDTX and the sale of its products in EDTX.  (*Id.*).

Stingray argues that EDTX has a legitimate local interest because Stingray is a party located in this district while Amazon is neither incorporated nor headquartered in NDCA.  (Dkt. No. 71 at 18).  Stingray also contends that Amazon's business practices in NDCA are not localized.  (*Id.*).  Stingray further argues that Amazon's activities constitute extensive connections to EDTX, including marketing, distributing, and selling the Accused Products.  (*Id.*).  Stingray builds upon its assertion that Amazon maintains a significant business practice in EDTX based on its infringing activities.  (*Id.* at 19).

In reply, Amazon notes that Stingray does not have a significant presence in EDTX because it largely just brings lawsuits.  (Dkt. No. 73 at 2-3).  Stingray notes that Amazon owns and operates distribution centers that store and deliver the Accused Products from Amazon to consumers in EDTX.  (*Id.*).

16

The Court finds that NDCA has a local interest because Lab126 and its engineers and eero, which develop the Accused Products, are located there. (Dkt. No. 67-27). However, Amazon has a well-established presence in EDTX and owns and operates various large, footprint distribution centers. (*See* Dkt. Nos. 71-11; 71-12; 71-13). Amazon's distribution facilities are located in this District, and accordingly, avails itself of the laws and protections provided within this District. *See Realtime Adaptive Streaming LLC v. Amazon.com, Inc.*, No. 6:17-cv-549, 2018 WL 4444097, at *6 (E.D. Tex. Sept. 5, 2018). At the end of the day, this factor is neutral.

### C.     The Totality of the Factors

The majority of the public and private factors are neutral. The availability-of-compulsory-process factor favors transfer while the willing-witnesses factor slightly weighs against transfer; the practical-problems factor substantially weighs against transfer; and the-avoidance-of-court-congestion factor slightly weighs against transfer. The Court notes that although the avoidance of court congestion slightly weighs against transfer, it is not alone dispositive. Considering the weight of all factors together, the Court gives "paramount consideration" to judicial economy and the time and resources that the Court have parties have already expended. *See Vistaprint*, 628 F.3d at 1347. Accordingly, the Court concludes that a fair weighing of these factors disfavor transfer. Amazon has not met its burden to show that NDCA is clearly more convenient.

### D.     The Motion to Continue

In the Motion to Continue, Amazon requests a two-week continuance of the claim construction hearing "to allow the Court additional time to resolve Amazon's pending motion to transfer venue to the Northern District of California." (Dkt. No. 86). In light of the above and the Court's concurrent ruling on the Motion, the Court finds that the Motion to Continue should be denied.

## IV.     CONCLUSION

The Court finds that Amazon's Motion to Transfer Venue to the Northern District of California (Dkt. No. 67) should be and hereby is **DENIED**.  Further, the Court finds that Amazon's Opposed Motion to Continue Claim Construction Hearing to Allow Time for the Court to Resolve Pending Motion to Transfer Venue (Dkt. No. 86) should be and hereby is **DENIED**.

**So ORDERED and SIGNED this 25th day of March, 2022.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE